UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JTC INDUSTRIES, INC. d/b/a EMPIRE
TREATER ROLLS,

        Plaintiff,

                                          09-CV-6331
                                          **DECISION**
        v.                                      **and ORDER**

THE TRAVELERS INDEMNITY COMPANY
OF AMERICA,

        Defendant.
_____


## **INTRODUCTION**

Plaintiff JTC Industries, Inc., ("JTC") a manufacturer of industrial rollers, brings this action against its insurer The Travelers Indemnity Company of America, ("Travelers") seeking insurance coverage from Travelers for property damage that JTC sustained in connection with its manufacture of certain rollers. Specifically, JTC claims that several of its rollers were damaged and rendered unusable as a result of using contaminated raw material in the manufacturing process. JTC claims that the contaminated raw material, which was supplied to JTC by a third-party vendor, also contaminated the equipment used to make the rollers, resulting in JTC being required to stop production of the rollers until the manufacturing equipment could be cleaned. JTC sought insurance coverage from Travelers for the damaged rollers, repair and cleaning of the manufacturing equipment, and lost business income resulting from production delays. Travelers,

however, denied JTC's claim on grounds that the damage was not covered under JTC's insurance policy. Thereafter, JTC brought the instant action seeking declarations that the damage it sustained is a covered loss under its insurance policy, and that Travelers is obligated to pay for JTC's loss.

The parties have now filed competing motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant Travelers contends that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law on grounds that the insurance policy at issue excludes losses for which JTC seeks coverage. JTC argues that the relevant terms of the insurance policy are ambiguous, and that under a reasonable interpretation of the policy terms, and construing the policy exclusions narrowly as the court must do, it is entitled to coverage for its losses.

For the reasons set forth below, I find that the losses for which JTC seeks coverage are excluded by JTC's insurance policy, and I therefore grant defendant's motion for summary judgment, and deny plaintiff's motion for summary judgment.

## BACKGROUND

Plaintiff JTC Industries, Inc., is a manufacturer of industrial rollers known as "Corona Treater Rollers" that are commonly used in the film, plastics, and paper industries. One of the materials used in the manufacture of the rollers is a substance

known in the industry as "frit." According to the parties, frit is a powder-like material that is used to coat the rollers during the production process.

In December, 2008, and again in February, 2009, JTC did not know that the frit it received from a supplier was contaminated with a metallic substance. The contaminated frit was used during the roller production process, and as a result, 11 rollers manufactured by JTC were defective, and unsuitable for use or sale. Additionally, the production equipment used to manufacture the rollers became contaminated by the frit, and had to be shut down until it could be decontaminated. As a result of the shut-down, JTC suffered production delays and lost business.

After determining the source of the problem, and after decontaminating its equipment, JTC submitted a claim to its insurer, defendant Travelers. JTC sought coverage for the costs of the 11 treater rollers that were rendered unuseable as a result of the contaminated frit, the costs of decontaminating the production equipment, and lost business income resulting from production delays. On March 18, 2009, following an investigation into the plaintiff's claim, Travelers disclaimed coverage on grounds that the policy at issue excluded coverage for losses attributable to property that was being "processed," "manufactured," or "worked upon," and also excluded coverage for losses attributable to contamination, or property damaged as a result of faulty or

defective materials.  Following defendant's denial of coverage, the plaintiff commenced the instant action.

**DISCUSSION**

I. The Parties' Motions for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought.  Scott v. Harris, 550 U.S. 372, 380 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate.  Scott, 550 U.S. at 380 (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986).

Travelers moves for summary judgment on grounds that there are no material facts in dispute, and that as a matter of law, it is entitled to judgment in its favor.  In support of its motion, Travelers contends that because the insurance contract contains unambiguous language specifically excluding the types of losses claimed by JTC, it properly denied plaintiff's claim, and is therefore entitled to judgment in its favor.

JTC cross-moves for summary judgment seeking a declaratory judgment that Travelers is obligated under the relevant policy to pay damages it sustained as a result of using the contaminated frit to manufacture its rollers. JTC claims that the policy provisions relied on by Travelers either do not apply, or are ambiguous, and must be narrowly construed against Travelers. JTC contends that if the relevant provisions are properly construed and applied, it is entitled to coverage for its losses.

For the reasons set forth below, I find that the alleged damage suffered by JTC as a result of using contaminated frit in manufacturing its treater rollers is excluded from coverage by its insurance policy with Travelers, and therefore Travelers properly denied JTC's claim for coverage.

II. Standard of Review

In determining the meaning of the terms used in an insurance policy, or any contract, the court must construe the terms "so as to give effect to the intention of the parties as expressed in the unequivocal language employed." Breed v. Ins. Co. of North America, 46 N.Y.2d 351, 355,(1978); Morgan Stanley Group, Inc. V. New Eng. Ins. Co., 225 F.3d 270, 275 (2nd Circ. 2000). Provided that the contract term at issue is unambiguous, interpretation of the contract language is a question of law for the court. Bourne v. Walt Disney Co., 68 F.3d 621 (2d Cir. 1995), cert. denied, 517 U.S. 1240 (1996). Moreover, the question of whether or not the

contract language itself is ambiguous is also a matter of law to be decided by the court. <u>Parks Real Estate Purchasing Group v. St. Paul Fire and Marine</u>, 472 F.3d 33, 42 (2nd Cir., 2006); see also <u>Mellon Bank, N.A. v. United Bank Corporation of New York</u>, 31 F.3d 113, 115 (2nd Cir. 1994) (question of whether or not contract is ambiguous is a question of law). Where as in this case, an insurer relies on an exclusion in a policy to deny coverage to an insured, the insurer bears the burden of demonstrating that coverage under the subject insurance policy is excluded. In doing so, the insurer must establish that the exclusion language relied on in the policy uses "clear and unmistakable language" to expressly exclude the coverage being sought by the insured. <u>Kimmins Indus. Service Corp. v. Reliance Ins. Co.</u>, 1993 WL 667308, at *3 (W.D.N.Y. 1993)).

Accordingly, to determine whether or not JTC is entitled to coverage for its alleged damages, the court must determine whether or not the policy exclusions relied on by Travelers are unambiguous, and whether they clearly and unmistakably exclude the coverage sought by JTC.

> III. The policy provision excluding coverage for property being "processed, manufactured, tested, repaired, restored, retouched or otherwise being worked upon" is not ambiguous, and clearly excludes the coverage sought <u>by the plaintiff</u>.

In denying coverage for the claim brought by JTC, Travelers relied on three exclusions set forth in the Businessowners Property

Insurance Policy it issued to JTC. The first exclusion relied on by Travelers provides in relevant part that:

> We will not pay for loss or damage caused by or resulting from . . .
>
> . . .
>
> The cost of correcting or making good the damage to personal property attributable to such property being processed, manufactured, tested, repaired, restored, retouched or otherwise being worked upon.

I find that this policy exclusion is unambiguous, and clearly and unmistakably precludes the coverage sought by JTC for the damages it suffered when it used the contaminated frit to manufacture its treater rolls. The policy clearly and specifically states that Travelers will not pay for the cost of correcting or making good damage to property in cases where the damage is attributable to the property being "manufactured." In this case, there is no question that the treater rollers were manufactured by JTC. Because the damage to the treater rollers, and the equipment used to manufacture the rollers, was attributable to the rollers being manufactured by JTC, the policy exclusion expressly precludes coverage for damage to those rollers and to the equipment used to manufacture the rollers. Moreover, because the damages did not result from a loss that is covered by the insurance policy, JTC is not entitled to coverage for lost business profits.

JTC contends, however, that the damage to the rollers and its machinery was not attributable to the manufacturing of the rollers,

but instead is attributable to the contaminated frit that was used in the manufacturing of the rollers. Specifically, JTC argues that:

> Plaintiff's damages arise from [the frit supplier's] improper formulation and supplying of the non-conforming frit. The roll[er]s were not damaged because they were being processed or manufactured by plaintiff, i.e., the frit was properly applied and the roll[er]s were not damaged by the frit application process itself. In other words, had [the supplier of the frit] supplied conforming frit, the roll[er]s would have been functional and plaintiff would not have suffered any damages. Thus, the actual damage causing event took place outside of plaintiff's manufacturing process.

Plaintiff's Memorandum of Law in Support of its Motion for Partial Summary Judgment at p. 5. Plaintiff's contention that the frit itself--and not the manufacturing of the rollers--was the cause of the damages is incorrect.

When determining the cause of a loss for purposes of accessing insurance coverage, courts are to look at the specific incident giving rise to liability, and not to look to "some point further back in the causal chain." Appalachian Insurance Company v General Electric Company, 863 N.Y.S.2d 742, 747 (N.Y. 2007). In the instant case, it was the use of the contaminated frit during the manufacturing process that caused the damage for which plaintiff seeks insurance coverage. Only when the rollers were actually manufactured, which included the application of the contaminated

frit to the rollers, did the damage occur. Accordingly, pursuant to the Court's reasoning in Appalachian, it was not the contaminated frit itself that caused damage to the rollers, it was the manufacture of the rollers, which manufacture included application of the frit to the rollers, that caused the damage to the rollers, and the machinery used to manufacture the rollers. Appalachian, 863 N.Y.S.2d at 748 (before exposure to harmful agent occurred, there was only a potential for harm). As a result, I find that it was the manufacture of the rollers that caused the damage to the rollers and the machinery used to manufacture the rollers, and not the failure of the supplier of the frit to supply uncontaminated frit.

This finding is in accord with the recent New York State Appellate Division case of International Flavors and Fragrances, Inc. v. Royal Insurance Company of America, 844 N.Y.S.2d 257 (N.Y. App. Div. 2007), where the court specifically held that shipment of a product which allegedly caused injury was not the incident which caused the injury. Rather, as the court explained, the shipment of the product "presented only potential for injury." International Flavors and Fragrances, 844 N.Y.S.2d at 262. Instead, it was the actual use of the product, and exposure thereto, that precipitated the actual harm, comprising the 'occasion giving rise to liability'

. . . ." (citing Appalachian, 863 N.E.2d at 1000.)[1]  Because in this case it was not the shipment of contaminated frit that caused the damage to plaintiff's rollers, but the manufacturing process itself that caused the harm to the rollers and the equipment used to manufacture the rollers, the damage is excluded from coverage under the express and unambiguous language of the policy.

JTC further argues that the policy exclusion relied on by the defendant does not apply because the exclusion is ambiguous.  In support of this contention, JTC argues that exclusion related to the manufacture of property could be read to require that the damage excluded from coverage be caused by some error in the manufacturing process itself.  Specifically, JTC contends that the provision which excludes coverage for damage to property that is "attributable to such property being . . . manufactured" requires that the damage be caused by some mistake or error in the manufacturing process.  JTC argues that in this case, where there was no error in the manufacturing process, it was not the manufacturing process that caused the damage, and therefore, the damage could not be attributable to the manufacturing of the treater rollers.  Rather, it was the introduction of the

---

[1] While the Appalachian and International Flavors courts were construing the term "occurrence" as used in the policies at issue in those cases, the analysis as to what constitutes an injury-causing event, and how that event is determined is applicable here, where the parties disagree as to what event caused the damage for which insurance coverage is sought.

contaminated frit to the rollers, which was not a part of the normal manufacturing process, that caused damage. JTC argues that because its reading of the exclusion is plausible, the court must find the exclusion to be ambiguous, and must adopt a narrow construction of the exclusion that favors the insured. <u>Breed v. Insurance Co. Of North America</u>, 46 N.Y.S.2d 351, 353 (1978).

Plaintiff's attempt to read an ambiguity into the exclusion clause fails, however, to create an actual ambiguity. The policy exclusion, in clear and unmistakable language, simply provides that damage attributable to the manufacturing of property is excluded under the policy. The policy does not state that damage attributable to the negligent or errant manufacturing of property is excluded, and there is no basis for reading such a limitation into the policy. Indeed, if the policy language were to be construed as plaintiff suggests, Travelers would be required to indemnify JTC for any imperfect roller that it manufactured as long as there were no errors or negligence involved in the manufacture of the rollers. But the policy purchased by JTC does not require Travelers to become the guarantor of JTC's products. And interpreting the manufacturing exclusion of the policy at issue to require such a result is neither reasonable nor plausible. I therefore find that the exclusion relied on by Travelers in denying plaintiff's insurance claim is not ambiguous, and excludes the coverage sought by JTC.

Finally, plaintiff contends that the policy exclusion at issue is ambiguous because the exclusion refers to "personal property," a term not defined in the policy itself. While plaintiff concedes that the exclusion may refer to "Business Personal Property," a term that is defined in the policy, the plaintiff contends that use of the undefined term "personal property" renders the policy language unclear. I find that the term "personal property" as used in the policy exclusion refers to "Business Personal Property," and is neither unclear nor ambiguous. I thus find plaintiff's contention to be without merit.

IV. Remaining Exclusions

In denying plaintiff's claims for coverage, Travelers also relied on two alternative policy exclusions. Because I find, however, that the exclusion for property being manufactured applies in this case, and I decline to reach the merits of the remaining exclusions invoked by Travelers.

**CONCLUSION**

For the reasons set forth above, I hereby grant defendant Travelers' motion for Summary Judgment, and deny plaintiff JTC's motion for Summary Judgment. Plaintiff's Complaint is dismissed in its entirety. Plaintiff's motion to strike is denied as moot.

ALL OF THE ABOVE IS SO ORDERED

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
September 7, 2010